UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

JOSE SARMIENTO CORREA,

                    Petitioner,

                                                    Case No. 25-cv-1960-pp

      v.

SAMUEL OLSON, KRISTI NOEM,
PAMELA BONDI, TODD M. LYONS
and SHERIFF DALE J. SCHMIDT,

                    Respondents.

**ORDER GRANTING *HABEAS* PETITION AND DENYING REQUEST FOR ATTORNEY FEES (DKT. NO. 1) AND CLOSING CASE**

The petitioner, who is represented by counsel, has resided in the United States since his arrival in 2022. Dkt. No. 1 at ¶¶21, 23. On November 20, 2025, Immigration and Customers Enforcement officers arrested him when he appeared for a routine check-in at the agency's Milwaukee Field Office. Id. at ¶¶2, 24. The petitioner has been detained since his arrest. Id. at ¶¶2, 15, 24. The court has no information reflecting that there has been a change in the petitioner's status, and the ICE detainee inmate locator shows that the petitioner remains in Dodge Detention Facility. https://locator.ice.gov. (Search: Jose Sarmiento-Correa, Venezuela)

The petitioner filed a petition for writ of *habeas corpus* under 28 U.S.C. §2241 seeking an individualized bond hearing. For the reasons explained in this order, the court will grant the petition and order the respondents to afford the petitioner a bond hearing or, if they cannot comply with that order, to release him.

1

## I.   Background

The facts are largely undisputed. The petitioner is a thirty-eight-year-old national of Venezuela who entered the United States without inspection on July 4, 2022. Dkt. No. 1 at ¶2.  He moved to Edgerton, Wisconsin and has worked as a painter for two years. Id. at ¶21. His partner, Joice Leon Ramos, has lived with the petitioner and was, at the time of filing, undergoing testing and treatment for signs of a precancerous condition. Id. at ¶22.

The petitioner was detained shortly after his arrival in 2022, but he was released under an order of Release on Recognizance (ROR), which required him to attend periodic check-in appointments with ICE personnel. Id. at ¶23. He attended three of these appointments; the final appointment was scheduled for November 20, 2025. Id. at ¶24. On November 20, 2025, ICE arrested the petitioner and transferred him to the Dodge County Jail in Juneau, Wisconsin. Id. ICE placed him in removal proceedings, in which he has been charged as someone who entered the United States without inspection. Id. at ¶25. The petitioner states that he intends to seek relief from removal through the renewal of an application for asylum. Id. at ¶26.

## II.   Petition

### A.   Jurisdiction

A federal court may issue a writ of *habeas corpus* when the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. §2241(c)(3). A petitioner may file a petition under §2241 to challenge detention orders in immigration proceedings. Zadvydas v. Davis, 533 U.S. 678, 688 (2001).

This court agrees with the other judges in this district who have decided that federal district courts have jurisdiction to consider such petitions in

2

immigration proceedings if "the petitioner is not asking the court to review a removal order, the decision to initially detain him or seek his removal, or any part of the process by which his eligibility for removal will be determined." Ramirez Valverde v. Olson, Case No. 25-cv-1502, 2025 WL 3022700, at *1 (E.D. Wis. Oct. 29, 2025), appeal filed December 23, 2025 (citing Jennings v. Rodriguez, 583 U.S. 281, 294 (2018)). "Title 8, United States Code, Sections 1252(a)(2)(B)(ii), (b)(9), and (g), do not deprive a federal district court of jurisdiction to consider challenges to a person's detention pending removal." Id. (citing H.G.V.U. v. Smith, No. 25 CV 10931, 2025 U.S. Dist. LEXIS 205993, at *5-*8, 2025 WL 2962610, at *3 (N.D. Ill. Oct. 20, 2025)). See also Cirrus Rojas v. Olson, Case No. 25-cv-1437, 2025 WL 3033967, at *3-4 (E.D. Wis. Oct. 30, 2025), appeal filed Nov. 25, 2025 (citations omitted) (Judge Ludwig); Lopez De La Cruz v. Schmidt, Case No. 25-cv-1562, Dkt. No. 18 at 3-5 (E.D. Wis. Nov. 19, 2025) (Judge Adelman); Ugarte-Arenas v. Olson, Case No. 25-C-1721, 2025 WL 3514451, at *3 (E.D. Wis. Dec. 8, 2025), appeal filed January 7, 2026 (Judge Griesbach).

> B.      The Parties' Arguments

>> 1.      *Petitioner's 2241 Petition* (Dkt. No. 1)

The petitioner argues that his continued detention without eligibility for an individualized bond hearing violates the Immigration and Naturalization Act (INA) and the Due Process Clause of the Fifth Amendment. Dkt. No. 1 at 20, 21. He explains that the INA prescribes three basic forms of detention for most noncitizens in removal proceedings: (1) 8 U.S.C. §1226 for noncitizens already in the country; (2) noncitizens seeking entry to the country under 8 U.S.C. §1225(b); and (3) noncitizens who have been ordered removed. Id. at 8-9. The petitioner argues that the respondent's new policy classifies all undocumented

3

noncitizens who entered the United States without inspection or admission as "applicants for admission" under §1225(b)(2). Id. at 10. According to the petitioner, the text of §1225 and the overall detention scheme of the INA makes clear that §1225(b)(2) does not include individuals who are apprehended when they already are inside in the United States. Id. at 11.

The petitioner argues that congressional intent and numerous federal court decisions support his position. Id. at 13-15 (collecting cases). He points to a decision from the Central District of California granting partial summary judgment to individual petitioners, certifying a nationwide class and extending declaratory judgment to the certified class. Id. at 16 (citing Maldonado Bautista v. Santacruz, Case No. 25-CV-01873, 2025 WL 3289861, at *11 (C.D. Cal. Nov. 20, 2025) (order granting partial summary judgment to named Plaintiffs-Petitioners)), appeal filed, Bautista, *et al.* v. United States Dep't of Homeland Security, *et al.,* Appeal No. 26-1044 (9th Cir. Feb. 23, 2026).[1]  The petitioner explains that the Bautista court ruled that the bond denial class members are detained under §1226(a) and may not be denied consideration for release on bond under §1225(b). Id. at 16. He asserts that he is entitled to a bond hearing as a Bautista class member because his present apprehension occurred in Milwaukee. Id. at 17. The petitioner maintains that the respondents unilaterally invoked an automatic stay of a bond granted by an immigration judge without demonstrating that the petitioner is a flight risk or a danger to others.

With respect to the Due Process Clause, the petitioner argues that the three-part test articulated in Matthews v. Eldridge, 424 U.S.C 319 (1976),

---

[1] The government has appealed and the Ninth Circuit stayed the court's class certification orders "insofar as they extend beyond the Central District of California. Maldanado Bautista, Appeal No. 26-1044 (9th Cir. Mar. 31, 2026).

4

weighs in his favor. Id. at 18. First, he argues that he has been detained under conditions that are indistinguishable from criminal incarceration and that he cannot work, see his family or maintain any privacy or freedom of movement. Id. Second, he asserts that his detention under §1225(b)(2) creates a substantial risk of erroneous deprivation of his interest in being free from arbitrary confinement. Id. at 19. Third, the petitioner argues that the government's interest in maintaining the current procedure is minimal because it "flies in the face of the statutory text, statutory framework, Congressional intent, almost three decades of prior practice, and the decisions of federal courts across the nation." Id. at 20.

The petitioner asks the court to issue a writ of *habeas corpus* requiring the respondents to immediate release him or to afford him a bond hearing within fourteen days. Id. at 22. He also asks the court to enjoin the respondents from moving him outside the jurisdiction, declare that his detention violates the INA and Due Process Clause of the Fifth Amendment and award him costs and fees under 28 U.S.C. §2412. Id. at 22.

　　　　2.　　Respondents' Answer (Dkt. No. 8)

The respondents argue that all foreign nationals seeking admission into the United States must be inspected by immigration officials under 8 U.S.C. §1225(a)(3). Dkt. No. 8 at 4. They say that those who are "present in the United States without being admitted or paroled" are deemed "inadmissible" and subject to removal under 8 U.S.C. §1182(a)(6)(A)(i). Id. The respondents contend that §1225 governs the detention and removal of "applicants for admission," defined as any "alien present in the United States who has not been admitted **or** who arrives in the United States." Id. at 4-5 (emphasis in original) (citing 8 U.S.C. §1225(a)(1)). They cite 8 U.S.C. §1101(a)(13)(A), which

5

defines "admission" and "admitted" as "the lawful entry of the alien into the United States after inspection and authorized by an immigration officer." Id.

According to the respondents, the plain text of the INA states that a foreign national in the United States is an "applicant for admission" until an immigration officer admits that person into the United States. Id. at 7 (citing 8 U.S.C. §1225(a)(1)). The respondents argue that because the petitioner has not alleged that he has been lawfully admitted and because the petitioner acknowledges that he lacks any legal status, he is deemed to be an "applicant for admission" subject to mandatory detention under §1225(b)(2)(A). Id. at 8. The respondents assert that §1225(a)(1) contains no temporal or geographic limitations. Id. They contend that the petitioner's presence in the United States makes him an "applicant for admission" subject to mandatory detention under 8 U.S.C. §1225(b)(2)(A). Id.

The respondents argue that because the statutory language is clear, the court need not consider legislative history, but they maintain that if the court were to consider the legislative history, it would find that it supports their position. Id. at 10. They argue that the long-standing practice of detaining those who appeared at a port of entry for inspection, but affording hearings to those who entered the country without inspection, led to an "incongruous result: foreign nationals who had lawfully appeared at a port of entry for inspection but were deemed inadmissible were ineligible for release on bond, while those who surreptitiously entered the county without inspection were entitled to request release on bond." Id. at 10-11. The respondents suggest that Congress amended the INA through the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (8 U.S.C. §§1101, *et seq.* and 1221, *et seq.*) to replace the word "entry" with the word "admission" and the words

6

"exclusion" and "deportation" with the word "removal" proceedings. Id. at 11 (citing Martinez v. Att'y Gen. of the U.S., 693 F.3d 408, 413, n.5). The respondents cite a House Report on the IIRIRA:

> This subsection is intended to replace certain aspects of the current "entry doctrine," under which illegal aliens who have entered the United States without inspection gain equities and privileges in immigration proceedings that are not available to aliens who present themselves for inspection at a port of entry. Hence, the pivotal factor in determining an alien's status will be whether or not the alien has been lawfully admitted.

Id. at 11 (citing H.R. Rep. No. 104-469(I), 1996 WL 168995, at 225 (Leg. Hist. Mar. 4, 1996)).

The respondents urge the court to follow Judge Brett H. Ludwig's decision in Cirrus Rojas v. Olson, Case No. 25-cv-1437, 2025 WL 3033967 (E.D. Wis. Oct. 30, 2025), appeal filed, Nov. 25, 2025. Id. at 12-13. They argue that Judge Ludwig found their position to be correct and held that 8 U.S.C. §1225(b)92)(A) applies to unadmitted foreign nationals found inside the United States and "mandates their detention throughout the pendency of removal proceedings." Id. at 13 (citing Cirrus Rojas, at *8). The respondents acknowledge that "a number" of federal courts have reached the opposition conclusion, including other courts in this district, but suggest that decisions by Judges Lynn Adelman and Byron Conway are unpersuasive. Id. at 14 (citing Ramirez Valverde v. Olson, 2025 WL 3022700 (E.D. Wis. Oct. 29, 2025) (Conway, J.), appeal filed, Dec. 22, 2025; Rivas-Alonso v. Olson, 2025 WL 3240928 (E.D. Wis. Nov. 20, 2025) (Adelman, J.); and Lopez De La Cruz v. Schmidt, Case No. 25-cv-1562, at Dkt. No. 18 (E.D. Wis. Nov. 19, 2025) (Adelman, J.)).

The respondents maintain that no due process violation has occurred because Congress specifically has authorized immigration officers to arrest and

7

detain foreign nationals for purposes of removing them from the country. Id. at 15. They assert that the petitioner's detention has not been prolonged or indefinite and that he cannot "demonstrate that there exists 'no reasonable likelihood of his removal in the foreseeable future.'" Id. at 14 (citing Zadvydas v. Davis, 533 U.S. 678, 702 (2001)). The respondents say that the petitioner is receiving the process he is due through his removal proceedings under 8 U.S.C. §1229a(b)(4). Id. at 16.

Finally, the respondents argue that Bautista has no preclusive effect because such relief can only be granted through a *habeas* claim and not a declaratory judgment action. Id. at 17. The respondents say that jurisdiction lies only in the district of confinement and where the immediate custodian is located. Id. at 18. They reason that the district court in California lacked jurisdiction to issue the writ in favor of this petitioner. Id. The respondents argue that the Bautista declaratory judgment has been appealed to the Ninth Circuit and has no preclusive effect here. Id. at 19. And the respondents argue that applying the Bautista declaratory judgment to this case contravenes the principles of preclusion. Id. at 20.

3.      *Petitioner's Reply* (Dkt. No. 9)

The petitioner filed a reply for the sole purpose of supplementing the "government's incomplete legislative history." Dkt. No. 9 at 1. The petitioner says that the text cited by the respondent does not address either of the custody provisions in §§1225 or 1226, but that another section of the report states that §1226 merely "restates" the existing bond provision. Id. at 2 (citing H.R. Rep. No. 104-469, pt. 1 at 129). The petitioner argues that the mandatory detention of all foreign nationals created practical challenges for which Congress made no preparations. Id. at 2. At the time Congress passed the

IIRIRA, there were 4,000,000 or more foreign nationals who had entered the country without inspection, but the bill increased funding for only approximately 8,500 beds. Id. The petitioner argues that the funding increase is consistent with the mandatory detention of foreign nationals who commit crimes, rather than of every foreign national who presents without inspection. Id.

     C.     <u>Discussion</u>

     1.     *Seventh Circuit Precedent*

Petitioners in this district and across the country have been filing petitions under 28 U.S.C. §2241, asking courts to consider the two statutes that govern the detention and removal of noncitizens: 8 U.S.C. §§1225 and 1226. Most of these petitions ask the court to decide whether the petitioner is eligible for release on bond while removal proceedings are pending. Section 1226 provides for the discretionary release of noncitizens on bond; §1225 requires detention with no opportunity for release on bond. Until early May 2026, the Seventh Circuit had not addressed the issue. And because the court's May 5, 2026 decision in <u>Castañon-Nava v. United States Dept. of Homeland Security</u>, 175 F.4th 828 (7th Cir. 2026), is a split decision, arguably the court has not yet "ruled" on it.

The factual background of <u>Castañon-Nava</u> was different from the factual background in this case. The author of the majority opinion, Judge John Lee, explained:

> In 2018, Plaintiffs filed this suit against the Department of Homeland Security and the U.S. Immigration and Customs Enforcement ("Defendants"), alleging that they violated 8 U.S.C. § 1357(a)(2) by arresting noncitizens without reason to believe that they were likely to escape before warrants could be obtained. To resolve the lawsuit, in 2022, Defendants and Plaintiffs entered into a Consent Decree that was negotiated over the course of two

9

different administrations. In it, Defendants agreed, among other things, to comply with § 1357(a)(2) when making warrantless arrests and issue a "Broadcast Statement of Policy" affirming "the underlying laws and policies applicable to all arrests effected under 8 U.S.C. § 1357(a)(2)." Dkt. 155-1 at 5, 6, 17.

In exchange, Defendants obtained a dismissal with prejudice and release of all related claims, "avoid[ing] the substantial expense, inconvenience, and distraction of further protracted litigation ... and finally put[ting] to rest and terminat[ing]" the action. *Id.* at 2. Defendants do not challenge the validity of the original Consent Decree or the authority of the district court to enter it.

Instead, Defendants appeal two orders the district court entered on October 7, 2025, and November 13, 2025. As to the former, Defendants object to the district court's decision to extend the Consent Decree by 118 days due to Defendants' substantial noncompliance with its terms. As to the latter, Defendants take issue with the district court's order that they release 13 class members, as well as approximately 200 additional individuals, whose arrests (in the district court's words) "potentially" violated § 1357(a)(2).

In December 2025, Defendants filed a motion to stay the orders pending appeal, which we denied in part and granted in part. *See Castañon-Nava v. U.S. Dep't of Homeland Sec.,* 161 F.4th 1048 (7th Cir. 2025). After the benefit of full briefing and oral argument, we now affirm the October 7 order's 118-day extension of the Consent Decree and affirm in part and reverse in part the November 13 order.

Castañon-Nava, 175 F.4th at 833-34 (footnotes omitted).

In Castañon-Nava, the government argued that 8 U.S.C. §1252(f)(1) grants only the Supreme Court the authority to restrain the operation of immigration laws via classwide injunctive relief. Id. at 836. It argued that this "bar" on classwide injunctive relief in immigration enforcement barred the district court from extending the consent decree. Id. at 836-37. That is not an issue in this case. This case involves an individual petitioner, not a member of a class.

In Castañon-Nava, the issue of whether a petitioner was entitled to a release hearing under §§1225 or 1226 arose because the district court had

ordered thirteen individuals to be released on the ground that they were arrested in violation of the consent decree. Id. at 842. The defendants asserted that that order violated §1252(f)(1) because it "restrict[ed] the government's ability to detain noncitizens pursuant to its authority under § 1225(b)(2)(A) and § 1226(a)." Id. at 842. Judge Lee acknowledged that his colleagues—Judge Doris Pryor and Judge Thomas Kirsch—believed that the court should not reach the interpretation of those two statutes "because § 1252(f)(1) proscribes our ability in this case to assess whether § 1225(2)(A) applies in the first instance." Id. at 843. Judge Lee didn't agree and explained why. Id. at 843-44. He then went on to address "the dispute at hand," which he described as "whether § 1225(b)(2)(A) applies to noncitizens who are unlawfully within the United States as well as those who present themselves at its borders and ports of entry." Id. at 144. Judge Lee concluded—based on the statutory language of §1225(b)(2)(A), its statutory context, its history and background and the government's historical practice and understanding—that §1225(b)(1)(A) "applies to 'applicants for admission' who are seeking lawful entry at the border or ports of entry and not to noncitizens unlawfully living in the country's interior." Id. at 856.

If all three panelists—Judge Lee, Judge Pryor and Judge Kirsch—had agreed both to reach the question of the government's interpretation of §1225(b)(1)(A) and on the interpretation of it, the Castañon-Nava decision would have ended this court's analysis. But they did not. Judge Pryor concurred in the portion of Judge Lee's ruling finding that the government had "waived reliance on 8 U.S.C. § 1252(f)(1)'s bar on classwide injunctive relief when they entered the Consent Decree and that the district court did not abuse its discretion in extending the Consent Decree's terms due to Defendants'

11

substantial noncompliance." Id. at 857. But she did not join the portion of Judge Lee's opinion that analyzed the government's interpretation of §1225(b)(2)(A); she opined that the defendants had waived that argument, and that if they hadn't, the bar on classwide injunctions would have prevented the district court from reaching the issue. Id. And Judge Thomas Kirsch dissented, both as to Judges Lee and Pryor's conclusion regarding the government's waiver of the classwide injunctive relief argument and as to Judge Lee's interpretation of §1225. Id. at 863-64.

What is a lower court to do with such a split decision? In Marks v. United States, 430 U.S. 188, 193 (1977), the Supreme Court stated, "[w]hen a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of five justices, 'the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds . . . .'" (quoting Gregg v. Georgia, 428 U.S. 153, 169 n.15 (1976)). In 2021, the Seventh Circuit considered this guidance:

> In recent decades, plurality decisions have become more frequent, especially on some of the most controversial issues the federal courts face. Lower courts have tried to follow the *Marks* instruction in a variety of scenarios, and scholars and lower courts have identified several distinct models for applying *Marks.*
>
> A helpful guide comes from Professor Ryan Sullivan:
>
>> The first of these approaches interprets *Marks* as limited to a narrow subset of plurality decisions reflecting a clearly discernable "implicit consensus" or "common denominator" among justices. The second approach understands *Marks* as an instruction to lower courts to identify the opinion in a plurality decision that reflects the judgment-critical vote—typically the fifth concurring vote—and treat that opinion as the Court's holding. The third and final approach looks for points and majority consensus among different factions of concurring and dissenting Justices on distinct legal issues raised by the plurality decision.

Ryan Williams, *Questioning Marks: Plurality Decisions and Precedential Constraints*, 69 Stan. L. Rev. 795, 806-07 (2017). Planned Parenthood of Ind. and Ky., Inc. v. Box, 991 F.3d 740, 743-44 (7th Cir. 2021). The court went on to say that the first model—the "common denominator" model—is "predominant in precedent." Id. at 744.

Assuming that the "narrowest ground" rule also serves as a guide to district courts attempting to apply fragmented Seventh Circuit decisions, the court has tried to apply the "common denominator" model to the Seventh Circuit's decision in Castañon-Nava. In doing so, it concludes that the "narrowest ground" on which concurring members of the panel agreed was the conclusion that the Department of Homeland Security and U.S. Immigration and Customs Enforcement had waived their ability to rely on §1252(f)(1)'s bar on classwide injunctive relief when they entered into the consent decree and that the district court hadn't abused its discretion in extending that decree. That is the only ground on which two of the three members of the Castañon-Nava panel agreed. It does not appear, therefore, that there is binding precedent from the Seventh Circuit regarding the competing interpretations of §1225(b)(2)(A) that the parties put forward here.

      2.    *This Court's Analysis*

"As with all questions of statutory interpretation, we start with the text of the statute to ascertain its plain meaning." United States v. Melvin, 948 F.3d 848, 851 (7th Cir. 2020) (quoting Jackson v. Blitt & Gaines, P.C., 833 F.3d 860, 863 (7th Cir. 2016)).

> In ascertaining a statute's plain meaning, we "must look to the particular statutory language at issue, as well as the language and design of the statute as a whole." *K Mart Corp. v. Cartier, Inc.*, 486 U.S. 281, 291 . . . (1988). Unless words are otherwise defined, they "will be interpreted as taking their ordinary, contemporary, common

> meaning." *Sandifer v. U.S. Steel Corp.*, 571 U.S. 220, 227 . . . (2014) (quoting *Perrin v. United States*, 444 U.S. 37, 42 . . . (1979)). We find words' ordinary, contemporary, common meaning by looking at what they meant when the statute was enacted, often by referencing contemporary dictionaries. *Jackson*, 833 F.3d at 863. If the statutory language's plain meaning is unambiguous, our inquiry ends there. *See River Rd. Hotel Partners, LLC v. Amalgamated Bank*, 651 F.3d 642, 649 (7th Cir. 2011).

Id. at 851-52. And the court must read the statute in a way to give effect to all provisions, "so that no part will be inoperative or superfluous, void or insignificant." Corley v. United States, 556 U.S. 303, 314 (2009).

The respondents assert that the petitioner is deemed to be an "applicant for admission" under 8 U.S.C. §1225(a)(1) because he never was lawfully admitted into the United States. Dkt. No. 8 at 2. In other words, they assert that all noncitizens are subject to mandatory detention. But the title of §1225 is, "Inspection by immigration officers; expedited removal of inadmissible arriving aliens; referral for hearing." It specifically references "arriving aliens"— not "all" aliens or "aliens" without a modifier. Although a statute's title cannot not override the plain text of a statute, the Supreme Court has "long considered that the 'title of a statute and the heading of a section' are 'tools available for the resolution of a doubt.'" Dubin v. United States, 599 U.S. 110, 120–21 (2023).

> Subsection (a)(1) of §1225 defines "applicant[s] for admission" as

> [a]n alien present in the United States who has not been admitted or who arrives in the United States (whether or not at a designated port of arrival and including an alien who is brought to the United States after having been interdicted in international or United States waters) shall be deemed for purposes of this chapter an applicant for admission.

"Admitted" is defined elsewhere in Title 8 as the "lawful entry . . . into the United States after inspection and authorization by an immigration officer." 8

14

U.S.C. §1101(a)(13)(A). Section 1225 explains that "all aliens (including alien crewman) who are applicants for admission or otherwise seeking admission or readmission to or transit through the United States shall be inspected by immigration officers." 8 U.S.C. §1225(a)(3).

That is §1225(**a**)(1). There is a separate track under §1225(**b**)(1) for processing arriving aliens and "certain other aliens who have not been admitted or paroled." This includes those who are inadmissible due to fraud, misrepresentation or lack of valid documentation; those whom an officer determines are inadmissible and seeking asylum; and other aliens who receive special designation by the Attorney General. 8 U.S.C. §1225(b)(1)(A)(i)-(iii)). Applicants for admission covered by §1225(b)(1) are removed "without further hearing or review" under an expedited removal process, unless the alien "indicates either an intention to apply for asylum . . . or a fear of persecution," in which case that alien is referred for an asylum interview. 8 U.S.C. §1225(b)(1)(A)(i)-(ii).

Important to the resolution of this dispute, §1225(b)(**2**) applies to all "applicants for admission" not covered by 1225(b)(1). Section 1225(b)(**2**) states that "in the case of an alien who is an **applicant for admission**, if the examining immigration officer determines that an **alien seeking admission** is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title." 8 U.S.C. §1225(b)(2)(A) (emphasis added). The phrase "seeking admission" is not defined by statute, but "seeking" is the present participle of the verb "seek;" it implies a present action. "Admission" is defined as a request for lawful entry after inspection and authorization. See 8 U.S.C. §1101(a)(13)(A). Read as a whole, §1225(b)(2) requires mandatory detention of a noncitizen who presently is

15

seeking entry but whom the immigration officer has determined is not clearly entitled to be admitted.

In contrast, §1226 is titled "Apprehension and detention of aliens." That section states that "[o]n a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. §1226(a). While that decision is pending, the Attorney General may "continue to detain the arrested alien," "release the alien on bond of at least $1,500" or "release the alien on conditional parole." 8 U.S.C. §§1226(a)(1)-(2). An immigration officer authorized to issue an arrest warrant may release an alien if the alien demonstrates that he does not pose a danger to property or persons and that he is likely to appear for future proceedings. 8 C.F.R. §1236.1(c)(8). After the district director makes the initial custody determination (including the setting of a bond), the alien may seek "amelioration" of release conditions and, prior to any final order, an immigration judge may detain the alien, release him or set a bond. 8 U.S.C. §1236.1(d)(1). The Attorney General may revoke bond or parole, and may rearrest and detain the alien "under the original warrant." 8 U.S.C. §1226(b). The United States Supreme Court has referred to §1226 as the "default rule" for arresting and detaining aliens "already present in the United States" pending removal. Jennings, 583 U.S. at 303.

There is an exception under §1226(c) that requires the detention of persons "who fall[ ] into one of the enumerated categories involving criminal offenses and terrorist activities." Jennings, 583 U.S. at 303; 8 U.S.C. §1226(c)(1)(E)(i)-(ii). These individuals are not entitled to a bond hearing and may be released under very limited circumstances. 8 U.S.C. §1226(c)(4). Congress recently amended §1226 to include in this section any alien who has

16

been "charged with, is arrested for, is convicted of, admits having committed, or admits committing acts which constitute the essential elements of any burglary, theft, larceny shoplifting, or assault of a law enforcement officer offense, or any crime that results in death or bodily injury to another person." Laken Riley Act, Pub. L. No. 119-1, §2, 139 Stat. 3, 3 (2025). Giving effect to both §1225 and §1226, the United States Supreme Court has offered the following guidance:

> U.S. immigration law authorizes the Government to detain certain aliens seeking admission into the country under §§ 1225(b)(1) and (b)(2). It also authorizes the Government to detain certain aliens already in the country pending the outcome of removal proceedings under §§ 1226(a) and (c).

Jennings, 583 U.S. at 289.

Relying on the plain language of both statutes, and giving meaning to all of the language of both statutes, the court concludes that the petitioner falls under the ambit of §1226. The petitioner is a noncitizen awaiting a decision regarding his removal. He was in Milwaukee at the time of his arrest. He was not seeking admission into the country at a border or port of entry, nor was he seeking admission after inspection. He does not appear to fall within one of the enumerated categories involving criminal offenses and terrorist activities, and the respondent has not made such an argument.

In the three decades prior to 2025, this petitioner—a noncitizen who'd been living in the country for several years—would have been entitled to a bond hearing under §1226. But in 2025, the Department of Homeland Security implemented a new policy amounting to a conclusion that prior administrations, the agency and the courts had been misinterpreting the language of §1226 for those three decades. The agency now treats everyone who has entered the United States illegally as an applicant for admission under

17

§1225(a)(1), regardless of how long that person has been present in the United States or how far they are found from the border. The Board of Immigration Appeals gave force to that policy by holding that immigration judges lacked the authority to consider requests to release on bond persons who entered the country without inspection. <u>Matter of Hurtado</u>, 29 I. & N. Dec. 216, 229.

But the respondents' reading of the statute classifying every noncitizen as an "applicant for admission" renders superfluous the language in §1226(c)(1) and cannot be squared with the text of the statute or the facts of this case. The respondents admit that the petitioner entered the United States in 2022 and since has lived and worked in Wisconsin. There is nothing in the record to suggest that the petitioner otherwise was inadmissible under §1225 or §1226.

In his opinion in <u>Castañon-Nava</u>, 175 F.4th at 848-56, Judge Lee looked beyond the plain language of the statute. He considered the statutory context, the legislative history and the thirty years during which the executive branch had interpreted §1225(b)(2)(A) as applying only to applicants for admission seeking entry at borders or entry ports. He summarized his holding:

> [T]he text, statutory context, legislative history, and long-standing Executive practice all confirm that § 1225(b)(2)(A) applies to 'applicants for admission' who are seeking lawful entry at the border or ports of entry and not to noncitizens unlawfully living in the country's interior. Given the statute's history, it is unreasonable to think that Congress in 1996 intended to subject millions of noncitizens to mandatory detention in the oblique, off-handed fashion that the Defendants claim. Thus, Defendants lacked the authority in the first instance to place the individuals at issue, all of whom were already within the United States, under mandatory detention pursuant to § 1225(b)(2)(A).

<u>Id.</u> at 856.

As this court has explained, the precedential impact of this conclusion, given that Judges Pryor and Kirsch did not join it, is unclear. But a week

before the final judgment in <u>Castaño-Nava</u>, a panel of the Second Circuit issued a decision in <u>Barbosa Da Cunha v. Freden</u>, 175 F.4th 61 (2d Cir. 2026). All three members of that panel reached the conclusion reached by Judge Lee, but additionally opined that the government's interpretation raises grave constitutional concerns:

> . . . Petitioner is protected by the Fifth Amendment's Due Process Clause, requiring any civil detention to be "nonpunitive in purpose and effect." *Zadvydas*, 533 U.S. at 690 . . .; *see also Velasco Lopez v. Decker*, 978 F.3d 842, 850 (2d Cir. 2020) ("[T]he Due Process Clause covers noncitizens, whether their presence here is lawful, unlawful, temporary, or permanent."). While noncitizens can be detained temporarily to "give[ ] immigration officials time to determine an alien's status without running the risk of the alien's either absconding or engaging in criminal activity," *Jennings*, 583 U.S. at 286 . . . that is not what is going on here, where detention is mandatory regardless of these risks. We discern no basis for subjecting all noncitizens in Petitioner's shoes to categorical detention without bond. As the government conceded at oral argument, Petitioner, like many unlawfully present noncitizens, presents no risk of flight nor any danger to the community. Indeed, when ordered by the district court to provide Petitioner with a bond hearing, the Agency agreed that he presented no such risks and released him.
>
> The government's interpretation would also likely subject Petitioner to unconstitutionally prolonged detention. Before he was arrested, Petitioner's asylum application was pending for nearly a decade, and it still has not been resolved. And while the government represents that removal is "practically attainable" for Petitioner, Appellant's Reply Br. at 32, proceedings have already lasted more than six months since his arrest with no clear end in sight. In fact, his next hearing is scheduled for June 28, 2027. *See EOIR Automated Case Info., Exec. Off. for Immigr. Rev.,* https://acis.eoir.justice.gov/en (search by 209 454 653, Brazil, or access an archived version at https://perma.cc/257V-4KT2) (last visited Apr. 27, 2026). Detaining Petitioner without a bond hearing until then would "raise[ ] serious due process concerns" under our precedents. *Black [v. Decker]* 103 F.4th [133, 150 (2d Cir. 2024)]; *see Velasco Lopez*, 978 F.3d at 855 (holding that continued detention of a noncitizen under Section 1226(a) for fifteen months pending removal violated due process).

> These concerns are compounded by the fact that noncitizens have no right to counsel and are therefore often unrepresented in removal proceedings. *See* 8 U.S.C. § 1229a(b)(4)(A). Unlike criminals detained for punitive purposes, noncitizens like Petitioner thus lack the ability to reliably challenge their detention or the conditions in which they are being held.

Id. at 94. Although the Second Circuit's decision is not binding on this court, the court shares the Second Circuit's concerns.

The court acknowledges that the Fifth and Eighth Circuits have endorsed the respondents' position with respect to §1225(b)(2)(A). See Buenrostro-Mendez v. Bondi, 166 F.4th 494 (5th Cir. 2026) and Avila v. Bondi, 170 F.4th 1128 (8th Cir. 2026). But the court finds more persuasive the petitioner's reasoning, as well as that of the Second Circuit, in finding that §1225(b)(2)(A) applies to those noncitizens who are applicants for admission and seeking admission at the border or port of entry, and that §1226 applies to those noncitizens arrested in the interior of the country. See also Lopez-Campos v. Raycraft, 175 F.4th 713 (6th Cir. 2026) (rejecting government's interpretation of §1225(b)(2)(A) and holding that the procedural due process clause entitles noncitizens to individualized bond hearings); Hernandez Alvarez v. Warden, 175 F.4th 1258 (11th Cir. 2026) (rejecting the government's interpretation of §1225(b)(2)(A) and affirming district court orders granting petitioners *habeas corpus* relief); Rodriguez v. Ortega, ___ F.4th ___ , Appeal Nos. 26-50183, 26-50219, 26-50221, 2026 WL 1906557 (5th Cir. July 2, 2026) (requiring the executive branch to hold bond hearings under the Due Process Clause). The court remains convinced that its analysis of §1225(b)(2) is sound until additional guidance comes from the Seventh Circuit.

Because the petitioner was arrested in Milwaukee over a year after his entry and many miles from the border, he falls under 8 U.S.C. §1226. The

court finds that his continued detention under §1225 without a bond hearing violates federal law.

Finally, in his request for relief the petitioner has requested fees under 28 U.S.C. §2412(d), but has not filed an application as required under the Equal Access to Justice Act. 28 U.S.C. §2412(d)(1)(B). The court assumes that that is why the government did not address the request in its answer. In any event, the petitioner would be entitled to fees only if the (1) government's litigation position was not substantially justified; (2) no special circumstances make an award unjust; and (3) the request is timely filed. 28 U.S.C. §2412(d)(1)(A), (B); Cunningham v. Barnhart, 440 F.3d 862, 863 (7th Cir. 2006). Given the circuit split on this issue, it is difficult to argue that the government's position was not substantially justified. See Herrera v. Olson, Case No. 25-cv-1994, 2026 WL 1602258, *2 (E.D. Wis) (finding the division within this district and across the country supports a finding that the government's position was substantially justified).

## III. Conclusion

The court **ORDERS** that the petition, filed under 28 U.S.C. §2241, dkt. no. 1, is **GRANTED** under the following conditions:

The court **ORDERS** that within seven days of the date of this order, the respondents must (1) afford the petitioner a bond hearing before an immigration judge under 8 U.S.C. §1226(a), at which time the government must bear the burden of justifying the petitioner's detention by proving, by clear and convincing evidence, the petitioner's dangerousness or flight risk; or (2) if the respondents cannot otherwise comply with the court's order, release the petitioner from custody under reasonable conditions of supervision.

21

The court **DENIES** the petitioner's request for attorney's fees. Dkt. No. 1 at 22.

The court **ORDERS** that this case is **CLOSED.** The clerk will enter judgment accordingly.

Dated in Milwaukee, Wisconsin this 7th day of July, 2026.

BY THE COURT:

**HON. PAMELA PEPPER**
**Chief United States District Judge**

22